## Case No. 17,840.
### WILSON v. STOLLEY.
[5 McLean, 1; [1] 1 Fish. Pat. Rep. 261.]

Circuit Court, D. Ohio.    Oct. Term, 1849.

PATENTED INVENTION—LICENSE TO USE—ASSIGNMENT.

1. A license to run a planing machine may be assigned, it not being a mere personal privilege.

2. In such case the assignee is bound to perform the conditions of the license.

3. The same rule applies to the assignment of his right by the licensor.

4. And a forfeiture of the license may be enforced according to its terms, by reason of the abandonment or neglect of the licensee.

[2] [Action on the case. Suit brought on letters patent for an improved method of planing, tonguing, and grooving and cutting into moldings, or either, plank, boards, or other material, and for reducing the same to an equal width and thickness, etc., granted William Woodworth, December 27, 1828, extended for seven years from and after December 27, 1842, in the name of William W. Woodworth, administrator of William Woodworth, deceased; limited by a disclaimer filed by said William W. Woodworth, administrator, January 2, 1843; reissued to the latter July 4, 1845, and again extended for seven years from December 27, 1849, by act of congress, passed February 26, 1849.

[On August 9, 1843, William W. Woodworth assigned all his right and interest in and to the said letters patent, and renewal in and for the county of Hamilton, in the state of Ohio, and in certain other territory, to James G. Wilson, the plaintiff, his executors, administrators, and assigns, for and during the residue of said first extension; and afterward, on August 29, 1843, Wilson granted, by an instrument in writing, to Moses Brooks and Joseph L. Morris the exclusive right, under said extended patent, in said county of Hamilton, as well as other territory, in said instrument described, and thereby authorized said Brooks & Morris to construct and use during the said first extension the said planing machine, in the said letters patent described, in said county of Hamilton. Afterward, on November 4, 1845, said Brooks & Morris granted to Jacob P. Wilson the exclusive right, under said pat-

[1] [Reported by Hon. John McLean, Circuit Justice.]
[2] [From 1 Fish. Pat. Rep. 261.]

ent for the first extended term aforesaid, in the county of Hamilton, and in certain other territory, and authorized the said Jacob P. Wilson to construct and use during the first extension, as aforesaid, the said planing machine, in the said letters patent mentioned, in said county of Hamilton.

[On July 9, 1845, by a certain instrument in writing of that date, William W. Woodworth, administrator, assigned and confirmed unto said James G. Wilson all the right and title of him, the said Woodworth, administrator, within the said county of Hamilton, and certain other territory, for and during the extensions of the said letters patent, to the exclusive right of making and using said improvement or machine.

[Afterward, on April 15, 1846, and before the defendant committed the grievances for which this action was brought, said Jacob P. Wilson assigned to said James G. Wilson, plaintiff, the exclusive right, under said patent extended as aforesaid, in the county of Hamilton, as well as other territory, to the extent of the interest of him, the said Jacob P. Wilson, as conveyed by the aforesaid deed of said Brooks & Morris.

[While said Brooks & Morris held, as aforesaid, the exclusive right under said extended patent, and had authority to use and construct the planing machine, as described in the patent, they granted, on September 11, 1843, to John H. Stolley, the defendant, a license. That portion of this license material to the present case is as follows:

["Whereas, John H. Stolley has two machines constructed according to the specifications in said letters patent, having fully viewed and considered said improvement, and of his own motion has requested and desired said Brooks & Morris to give him a license for using one of his two machines on the said improved plan, in the county of Hamilton aforesaid, and in no other place, on conditions hereinafter mentioned, and has offered to pay said Brooks & Morris the sum of one dollar and twenty-five cents for each and every thousand feet he may plane, payable on every Monday, during the unexpired term of said extended patent, and to plane boards for others than himself for cash only; and to require payment for the same before the boards go out of his possession; and to require such price for planing as shall be agreed on by a majority of the owners of machines running under this patent in said county, said Stolley being one of them, as they shall from time to time determine on; and, whereas, by competition heretofore, the price has been reduced to seventy-five cents per hundred feet, it is agreed not to reduce below that price until agreed on by a majority of the owners as aforesaid, to which request and desire the said Brooks & Morris have agreed to comply: Now, in consideration of the propositions aforesaid, to wit, that the said John H. Stolley shall pay said Brooks & Morris one dollar and twenty-five

cents for each and every thousand feet of boards he may plane, payable on Monday of every week during the extended term of said patent, and shall render an account, if required, under oath, and shall keep books in which entries of all boards planed shall be made, and shall give said Brooks & Morris access to said books at all times, and shall plane no boards for any other person than himself for anything but cash, and shall require payment thereof before the boards go out of his possession, the said Brooks & Morris license said Stolley the right of running either of his two machines, provided he does not run more than one of them at a time; and, provided, also, he shall keep and perform, on his part, all the stipulations aforesaid. And the said Brooks & Morris having also two machines, and Hughes & Foster having also two other machines, which they wished to run under said letters patent, it is further agreed by the said Brooks & Morris, that they will not run more than their two machines at any one time; nor will they license Hughes & Foster to run more than one of their said machines at any one time; nor will said Brooks & Morris license any additional number of said machines, in the county of Hamilton aforesaid during said extended term of said letters patent, nor will they plane boards for other persons than themselves without requiring cash for the same, nor will they plane boards other than their own at less price than shall be fixed by a majority of the owners of said right as aforesaid. It is further agreed that, in case said Brooks & Morris may think proper to bring suits against any persons for infringing the aforesaid patent right, they shall do it at their own cost; and nothing herein shall be so construed as to prevent said Brooks & Morris from receiving from persons infringing said patent, for their own use, such sums as they may think proper to receive, either after suit brought or before, and, in case of such compromise, said Brooks & Morris may grant to such persons license to run. notwithstanding anything herein contained. And it is further agreed, that if said Stolley elect to abandon the running of his machine as aforesaid, or cease for two weeks to run the same, then such neglect to run shall be considered an abandonment on his part, and said Brooks & Morris may consider this contract at an end. Witness our hands and seals, this 11th day of September, 1843, at which day this contract commences—parties each hold a copy hereof. John H. Stolley. (Seal.) Jos. L. Morris. (Seal.) M. Brooks. (Seal.)"

[After said James G. Wilson, plaintiff, had become possessed of the rights of the administrator and of Brooks & Morris, in and under the patent for the said county of Hamilton and elsewhere, the defendant committed in said county certain grievances, which are sufficiently set forth in the opinion of the court, whereupon this action was

brought, the declaration of which charged infringement and actual damages to the amount of five thousand dollars, and asked for exemplary damages, and charged that the defendant had refused to pay the plaintiffs damages incurred by reason of infringement.

[The defendant pleaded not guilty, and set up, among other matters, by way of defense, the license granted him by Brooks and Stolley, of September 11, 1843, and averred he had always performed all the stipulations in said contract of license on his part to be performed, with the exception of paying the said license money, which money he had always been and was then ready to pay, and had repeatedly offered to pay as well to Brooks & Morris as to plaintiff, who had uniformly refused to receive the same, and presented with the plea an exhibit of the account of said license moneys due and unpaid.] [2]

E. P. Norton, Groesbeck & Telford, and Henry Stanbery, for plaintiff.

T. Walker, Storer & Gwynne, and Thomas Corwin, for defendants.

McLEAN, Circuit Justice (charging jury). This is an action at law, to recover damages for the infringement of Woodworth's patent for planing boards, which has been assigned to the plaintiff. The defendant sets up a license in his defense. Plaintiff alleges that the license was forfeited by the defendant. The license was given by Brooks & Morris, in whom the right to the patent was vested, but they have since assigned to the plaintiff. In that assignment the license to Stolley and others is referred to, and Wilson, the plaintiff, bound himself to do what Brooks & Morris were bound to do. In the license it is stated that Stolley has two planing machines, and he was authorized to run either. Stolley agreed to pay one dollar and twenty-five cents to the lessor, or his assigns, for every thousand feet of boards by him planed, to be paid every Monday morning, during the term of the lease; and that he will work for cash only. He bound himself to keep regular books, to be inspected when required by the licensor, and that he would make his return under oath, when required. Among other provisions of the contract, it was agreed, if said Stolley elect to abandon the running of his machines as aforesaid, or cease for two weeks to run the same, then such neglect to run shall be considered an abandonment on his part, and said Brooks & Morris may consider this contract at an end.

Under the contract, Stolley had a right to abandon it without cause. The neglect, for two weeks, to run the machine, might be considered an abandonment by the plaintiff. A formal notice was not necessary by the plaintiff, that he considered the failure to run the machine two weeks as an abandonment. Any unequivocal act, showing a waiver of the right to put an end to the contract, such as an·expressed determination to enforce it, would be sufficient; or an acceptance of rent subsequently. A refusal to receive the rent would show, that he considered the contract terminated.

It seems, from the testimony, that Stolley sold his license to Garrard. The license, we suppose, was assignable, as it could not be considered a personal privilege. Garrard purchased the machine of Stolley, and commenced running it the 1st of June, 1846. Inquiry was made of Garrard, by Wilson, jun., by what right he was running the machine; and he was informed that he was running under Stolley's license, which had been ·assigned to him, and that his father, the plaintiff, had promised to give him a license if Stolley would abandon his license. Young Wilson then gave Garrard notice to cease running the machine. Stolley was then in the shop, and told Garrard to go on,—that he would stand between him and Wilson. Witness ran the machine from 1st June to October, 1846. In September, Garrard informed Stolley, that he had made an agreement with Wilson, to run the machine. Stolley proposed to Garrard to rescind the sale of the machine, and refund the money, and give him the use of the property up to that time, but Garrard refused to cancel the contract. On the 30th of September, 1846, Stolley commenced an action of replevin for the machine, until which time Garrard continued to run it. About two weeks before this, Stolley commenced running a new machine. Garrard was induced to purchase in the first, by the representations of Stolley, that he would give his custom in that business, as far as he could by sending his customers to him. When the sale was made to Garrard, Stolley stated as a reason for selling, that his saw mill and the planing machine afforded more business than he could attend to.

From these facts, gentlemen of the jury, it will be for you to say, whether there was not an abandonment of his license by Stolley. He sold his machine, agreed to transfer his license, and ceased to run a machine from some time in May till·some time in September. To cease two weeks was an abandonment under the contract. But here was an abandonment of more than three months, under a declaration that he intended to quit the business, as he had more to do than he could attend to. Under these facts, it will not be difficult for you to render a verdict in the case, and you will find such damages in favor of the plaintiff as you shall think the circumstances require.

Verdict for the plaintiff.

[This case was twice tried before a jury. Upon the first trial the jury brought in a verdict of five hundred dollars damages for the plaintiff. This verdict being set aside, upon the second trial, before a new jury, the latter brought in a verdict

[2] [From 1 Fish. Pat. Rep. 261.

of five dollars damages for the plaintiff. A motion to set aside this latter verdict was overruled, and the verdict confirmed.] [2]
[For other cases involving this patent, see note to Bicknell v. Todd, Case No. 1,389.]

---

WILSON v. STOLLEY. See Cases Nos. 1,-962 and 1,963.